IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BELINDA JANE WADE,

      Plaintiff,                     No. 2:10-cv-01153 KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                 <u>ORDER</u>

/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income benefits under Title XVI of the Act.[1]  In her motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) failing to address every aspect of certain medical records and an examining physician's opinion, thereby "tacitly" rejecting purported work-related limitations noted therein; (2) failing to properly address plaintiff's obesity; (3) finding that plaintiff's testimony regarding her limitations was not credible

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301.  (Dkt. Nos. 6, 9.)

1

to the extent that it was inconsistent with the residual functional capacity found by the ALJ; (4) failing to properly address third-party lay witness reports or observations provided by Judith Ogletree and a Social Security Administration representative; and (5) not calling a vocational expert to testify regarding plaintiff's ability to perform past relevant work as actually performed. (See generally Pl.'s Mot. for Summ. J., Dkt. No. 18.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.[2] (Def.'s Cross-Motion for Summ. J., Dkt. No. 19.) For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND[3]

   A.   Procedural History

On March 9, 2007, plaintiff filed applications for Disability Insurance Benefits and Social Security Income, alleging a disability onset date of January 15, 2006.[4] (See Admin. Tr. ("AT") 89-103.) Plaintiff subsequently amended the alleged onset date to March 1, 2006. (AT 43, 184.) Plaintiff's applications were premised on alleged illnesses or conditions of bipolar disorder, depression, diabetes, and hepatitis C. (See AT 74, 82, 128, 137, 158.)

The Social Security Administration denied plaintiff's applications initially and upon reconsideration. (See AT 70-78, 82-86.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's applications on November 4, 2008. (AT 36-37, 41-69, 88.) Plaintiff testified at the hearing and was represented by counsel. Plaintiff also submitted, and the ALJ considered, a third-party function report prepared by plaintiff's friend,

---

[2] Plaintiff did not file a reply brief.

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as is necessary to resolve the issues presented by the parties' respective motions.

[4] Plaintiff was 35 years old at the time of the hearing before the ALJ, and testified that she had a G.E.D. degree. (AT 43, 45.)

Judith Ogletree. (AT 21, 119-26.) The ALJ did not call a vocational expert to testify at the hearing regarding plaintiff's ability to work.

In a written decision dated January 2, 2009, the ALJ denied plaintiff's applications for benefits on the basis of a finding that plaintiff was "capable of performing past relevant work as an answering service operator."[5] (AT 21.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 1-3.) Plaintiff subsequently filed this action.

---

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

  B. <u>Summary of the ALJ's Findings</u>

  The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since March 1, 2006, the alleged onset date." (AT 17.)

  At step two, the ALJ concluded that plaintiff had the following "severe" impairment: "mood disorder not otherwise specified." (AT 17.) The ALJ expressly declined to adopt the state agency's determination that plaintiff did not have a severe mental impairment. (AT 21.) At this step in the analysis, the ALJ discussed plaintiff's substance abuse and recovery, and plaintiff's medical history suggesting conditions of hepatitis C, obesity, episodic asthma, and symptoms of bipolar disorder. (<u>See</u> AT 17-18.) However, the ALJ concluded that none of these impairments rose to the level of a severe impairment. (<u>See</u> AT 18 (concluding, among other things, that "although the claimant is obese and has hepatitis C and episodic asthma, the medical evidence of record fails to demonstrate any significant deficits in work-related activities lasting for any 12-month period").

  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the applicable regulations. (AT 18.) Prior to reaching step four of the analysis, the ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, detailed, and unskilled work.

(AT 19.) In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found that plaintiff testimony was not credible to the extent that it conflicted with the assigned RFC. (<u>See</u> AT 20-21.) The ALJ relied, in part, on the third-party report of Ms. Ogletree in discounting plaintiff's testimony and finding plaintiff not disabled. (AT 21.)

  Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff was

"capable of performing past relevant work as an answering service operator," which plaintiff had performed on a full-time basis over a period of 15 years. (AT 21; see also AT 129.)  The ALJ found that plaintiff could perform her past work "as actually performed" because plaintiff's prior work involved "simple duties such as answering the phone and some detail in doing some data input, etc." (Id.) The ALJ also noted that plaintiff had "indicated that she stopped working because her grandmother died, i.e., not due to her mental impairment." (Id.) The ALJ continued:

> Though this may have been a stressful event causing understandable grieving the present record does not show that it was such a catastrophic event causing [the claimant] to decompensate to the extent that she could no longer work. Rather, she was able to continue with her life and handle the various demands required to take care of her family, housework, cooking, and various other activities in a successful manner. Indeed, the fact that she could succeed with her [substance abuse] recovery efforts reinforces the conclusion that her mental status has remained intact during the alleged period of her disability.

As a result of the ALJ's finding at step four, the ALJ found that plaintiff was "not disabled" without reaching step five of the analysis. (AT 21-22.)

II.  STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

III.   DISCUSSION

    A.   The ALJ's Characterization of the Medical Records

Plaintiff claims that the ALJ mis-characterized the medical record and failed to reflect the opinions of medical providers in the RFC. Plaintiff's argument concerns three pieces of evidence: (1) an April 13, 2006[6] assessment of plaintiff completed by staff at a Sacramento County Adult Mental Health Services clinic (AT 217-22); (2) an April 24, 2008 psychiatric assessment completed by staff at Visions Unlimited, a mental health agency with Sacramento County (AT 374-78); and (3) the report of Silvia Torrez, Psy.D., who examined plaintiff (AT 343-50).

The ALJ discussed plaintiff's mental health records concerning plaintiff's symptoms of bipolar disorder at length, including the records dated April 13, 2006, and April 24, 2008. (AT 18.) The ALJ's discussion encompassed records from 2004 through 2008. (Id.) In regards to the April 13, 2006 assessment, the ALJ provided the following summary:

> Sacramento county [sic] mental health records indicate that [the claimant] presented in April 2006 complaining of sadness, impaired sleep, interests,

---

[6] Plaintiff errantly referred to this assessment as having taken place on April 3, 2006.

and concentration, social withdrawal, and other complaints following the suicide of her grandmother. The initial assessment was a bipolar disorder.

(Id.) In regards to the April 24, 2008 assessment, the ALJ stated:

In April 2008, [the claimant] presented to a Sacramento County mental health clinic with depressive symptoms indicative of bipolar disorder with a GAF of 50, though she was unable "...to identify any negative repercussions that occur as a result of her depressed episodes." She was reportedly still clean and sober (for 18 months). The present exam demonstrated good appearance, cooperative attitude, adequate behavior, full orientation, coherent speech, normal mood, affect, thought processes, judgment, insight, and concentration, immediate and remote memory with fair recent memory.

(Id.)

Plaintiff contends that the ALJ did not discuss certain aspects of these medical notes and, as a result, tacitly rejected "opinions" contained therein.[7] Contrary to plaintiff's assertion, the undersigned concludes that the ALJ conducted a sufficient discussion of plaintiff's mental history in connection with steps two and three of the analysis, and in assessing plaintiff's RFC. The ALJ was not required to discuss every piece of medical evidence in his written decision. See, e.g., Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence") (citation and internal quotation marks omitted). The ALJ's decision reflects that he considered the record as a whole and weighed the functional assessments contained in plaintiff's mental health records in both assessing plaintiff's RFC and finding that plaintiff could perform her past work. (See AT 18-19, 21-22.) Accordingly, the undersigned finds unpersuasive plaintiff's argument that the ALJ failed to properly characterize the record.

Plaintiff also attacks the ALJ's characterization of the examining report of Dr. Torrez. (AT 343-50.) The ALJ gave "significant weight" to Dr. Torrez's opinion, "which found the claimant successfully undergoing treatment for her substance abuse, which was in early

---

[7] Much of what plaintiff contends the ALJ rejected consists of plaintiff's subjective reports of her symptoms, not actual medical opinions. (See AT 374.)

1  remission, along with experiencing a moderate mood disorder with a fair capacity to perform the
2  various mental demands of work with the capability of understanding and remembering short,
3  simple, and detained instructions."[8]  (AT 21.)  Plaintiff contends that ALJ implicitly rejected Dr.
4  Torrez's opinion by not expressly and specifically recounting all of the work-related functions
5  that Dr. Torrez found plaintiff had a "fair" capacity to perform.  She contends that as a result, the
6  RFC does not accurately reflect plaintiff's limitations.  However, the ALJ specifically noted
7  plaintiff's "fair" ability to perform work-related functions.  He was not required to recite all of
8  the findings in Dr. Torrez's report, and permissibly summarized Dr. Torrez's finding.  The
9  undersigned finds that the ALJ did not reject, and adequately related, Dr. Torrez's functional
10 assessment of plaintiff.

11      The undersigned concludes that the ALJ did not fail to accurately characterize the
12 medical evidence and the medical records.  Plaintiff's arguments in this regard are unpersuasive.

13      B.    The ALJ Did Not Err In Assessing Plaintiff's Obesity

14      Plaintiff was diagnosed as morbidly obese by at least one consulting physician,
15 had a reported weight between 258 and 296 pounds during the relevant period, and testified at the
16 hearing that she was five feet and two inches tall and weighed 296 pounds.  (AT 68, 355.)
17 Plaintiff contends that the ALJ erred by not considering plaintiff's obesity to be a "severe"
18 impairment at step two, and failed to assess the impact of plaintiff's obesity as required by Social

---

[8] Dr. Torrez prepared a functional assessment of plaintiff.  (AT 349.)  Dr. Torrez found that insofar as plaintiff's psychiatric condition was concerned, plaintiff was capable of managing her own funds and had: a "good" ability to understand and remember very short and simple instructions; a "good" ability to understand and remember detailed instructions; a "good" ability to maintain attention and concentration; a "fair" ability to accept instructions from a supervisor and respond appropriately; a "fair" ability to sustain an ordinary work routine without special supervision; a "fair" ability to complete a normal workday and workweek without interruption and at a constant pace; a "fair" ability to interact with coworkers; and a "fair" ability to deal with various changes in the work setting.  (Id.)  Dr. Torrez also found, however, that there was a "fair" likelihood of plaintiff "emotionally deteriorating in a work environment."  (Id.)

8

Security Ruling[9] ("SSR") 02-1p, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002).[10]  Plaintiff addresses these arguments together.  In any event, the undersigned finds that plaintiff failed to meet her burden as to each contention.

At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments.  See 20 C.F.R. §§ 404.1520(a)(4)(ii); accord 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months."  See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), (c), 404.1521(a); accord 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909.  Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[11]  Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  See Smolen, 80 F.3d at 1290.  The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is unlikely they would be disabled even if their age, education, and experience were taken into account."  Bowen, 482 U.S. at 153.  "An impairment or combination of impairments may be found not severe *only* if the evidence

---

[9]  "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy."  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless."  Bray, 554 F.3d at 1224 (citation omitted).

[10]  In this section of plaintiff's motion, plaintiff also suggests in passing that the ALJ potentially erred by not finding that plaintiff's hepatitis C and asthma were "severe" impairments. (See Pl.'s Mot. for Summ. J. at 18.)  Plaintiff's perfunctory suggestion of error in this regard fails to argue the legal or factual basis for plaintiff's contention and, accordingly, the undersigned finds this argument unpersuasive and does not further address it here.

[11]  The regulations provides examples of such abilities and aptitudes, and include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521.

establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

In regards to SSR 02-1p, that ruling states that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat." It further states that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems," and "may also cause or contribute to mental impairments such as depression." SSR 02-1p requires an ALJ to consider an individual's obesity at steps two through five of the sequential evaluation, and requires that obesity be considered in combination with the individual's other impairments. It also states that "[an adjudicator] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The adjudicator] will evaluate each case based on the information in the case record." When evaluating obesity in order to determine a claimant's RFC, the ALJ must consider "an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." Burch, 400 F.3d at 683 (citations omitted). Plaintiff bears the burden of proving that her obesity exacerbated her other impairments. See id. at 682.

Here, the ALJ considered and addressed plaintiff's obesity at step two of the sequential analysis and found that it was not a severe impairment. (AT 18.) The ALJ noted that during an October 2007 internal medicine consultation, plaintiff was "noted to be obese at 258 pounds but demonstrated no problems walking, moving about, or otherwise." (Id.) Additionally, the ALJ remarked that plaintiff's "[m]otor strength, sensation, and reflexes were normal," and that "[n]o functional limitations were found." (Id.) Ultimately, the ALJ found on the basis of the record that "although plaintiff [was] obese . . . the medical evidence of record fails to demonstrate any significant deficits in work-related activities lasting for any 12-month period."

(Id.)

Plaintiff's motion for summary judgment addresses plaintiff's contentions regarding obesity in largely conclusory fashion and offers several contentions as to how obesity might impact a hypothetical person. However, in addressing how obesity impacted plaintiff's ability to work or exacerbated other conditions in a manner that impacted her ability to work, plaintiff only argues that her obesity made her tired. However, as the Commissioner correctly points out, no physician found that plaintiff's obesity restricted plaintiff's ability to perform work-related activities. Additionally, plaintiff prepared a functional report in which she failed to note any functional limitations caused by her obesity other than her need to catch her breath after walking between half of one block and one block.[12]  (See AT 116.)  Importantly, plaintiff testified that her fatigue and tiredness were a result of her depressive symptoms and hepatitis, not her obesity. (AT 62, 66-67.)

In regards to the ALJ's finding at step two, the undersigned concludes that plaintiff has not met her burden to demonstrate how her obesity negatively affected her ability to work such that it should have been considered a severe impairment. The undersigned similarly concludes that plaintiff has not met her burden in regards to her argument that the ALJ improperly assessed plaintiff's obesity under SSR 02-1p. See Burch, 400 F.3d at 684 (holding that the ALJ did not err in assessing plaintiff's RFC because plaintiff failed to set forth evidence, and there was no evidence in the record, of functional limitations caused by plaintiff's obesity).

C.   The ALJ's Credibility Determination Was Not Erroneous

Next, plaintiff attacks the ALJ's credibility determination. The ALJ found that plaintiff's statements regarding "the intensity, persistence and limiting effects of [plaintiff's] symptoms [were] not credible to the extent they [were] inconsistent with the above residual

---

[12] Although not relied on by the ALJ, the undersigned notes, but does not rely on the fact, that plaintiff's applications for benefits were not premised on the condition of obesity. (See AT 74, 82, 128, 137, 158.)

functional capacity assessment." (AT 20.)

In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also Burch, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

Here, the ALJ recounted plaintiff's testimony in some detail and appears to have concluded that plaintiff satisfied the first step of the credibility analysis. (See AT 19-20.) Because neither the ALJ nor the Commissioner cited to evidence of malingering in the record,

1   and there appears to be none, the ALJ was required to provide clear and convincing reasons for
2   discounting plaintiff's credibility.
3              The ALJ discounted plaintiff's testimony regarding her functional limitations on
4   the basis of clear and convincing reasons that are supported by substantial evidence in the record.
5   First, the ALJ found plaintiff's testimony about her ability to lift and carry only ten to fifteen
6   pounds not credible because "the medical evidence doesn't not [*sic*] establish the presence of a
7   severe disorder that would support those limitations (or any other physical limitations)."
8   (AT 20.)  Plaintiff does not point to any evidence suggesting that the ALJ's assessment was
9   mistaken.  Instead, plaintiff contends that obesity and the resulting fatigue could result in the
10  lifting and carrying restriction suggested by plaintiff.  The undersigned finds plaintiff's
11  generalized argument in this regard entirely insufficient to overcome the ALJ's finding.
12  Moreover, plaintiff's argument is undercut by the determination above that the ALJ properly
13  assessed plaintiff's obesity.
14             Second, the ALJ found that plaintiff's "assertion that she is disabled from
15  depression is also not supported by the present record, including her wide ranging daily activities
16  and social functioning and the record as a whole."  (AT 20.)  Although plaintiff is correct that a
17  claimant should not be penalized for attempting to live a normal life, the record nonetheless
18  supports the ALJ's finding that plaintiff's daily activities and social functioning undermine
19  plaintiff's claim of complete disability as a result of depression.  For example, a function report
20  completed by plaintiff noted that she lived with a roommate, cared for her daughter, cooked, did
21  laundry, went on walks, was able to use public transportation, shopped for food and toiletries,
22  and frequently attended Narcotics Anonymous meetings.  (See AT 111-18.)  Although this report
23  notes signs of depression and that plaintiff's daughter assisted plaintiff in household chores, the
24  ALJ's finding is supported by substantial evidence.  Elsewhere in the ALJ's decision, the ALJ
25  noted Dr. Torrez's report, which indicated that while plaintiff was living in a shelter, plaintiff
26  cared for her son, attended yoga classes, watched television, and attended Narcotics Anonymous

meetings and several therapy groups.  (AT 19, 348.)  The ALJ also relied, in part, on the third-party function report prepared by plaintiff's friend, Ms. Ogletree, which supported the ALJ's characterization of plaintiff's daily activities and social functioning.  (See AT 20-21, 119-26.)  And as discussed below, the ALJ properly evaluated and addressed Ms. Ogletree's function report.

The ALJ provided sufficient reasons for discounting plaintiff's testimony, and those reasons are supported by the record.  Accordingly, the undersigned concludes that the ALJ did not err in assessing plaintiff's credibility.

D.   The ALJ Did Not Err In Addressing the Third-Party Observations

Plaintiff also contends that the ALJ erred by failing to properly address the third-party function report provided by plaintiff's friend, Judith Ogletree (AT 119-26), and failing to "mention" the observations noted by a representative of the Social Security Administration who at one point interviewed plaintiff (AT 109).  The Commissioner failed to directly address plaintiff's contentions.  Regardless, the undersigned concludes that the ALJ did not err in either respect.

In assessing whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's ability to work.  Bruce, 557 F.3d at 1115 (citing Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006), and 20 C.F. R. §§ 404.1513(d)(4), (e)).  Such testimony "*cannot* be disregarded without comment."  Id. (citation omitted).  "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'"  Valentine, 574 F.3d at 694 (modification in original) (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  "[T]he reasons 'germane to each witness' must be specific."  Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054).

Here, the ALJ considered *and credited* Ms. Ogletree's third-party report as follows:

In arriving at the claimant's [RFC] the undersigned also considered the

14

        March 2007 statement from Judith Ogletree, who indicated she had been the claimant's friend for three years and had been visiting her a couple times a week. She indicated the claimant's activities consisted of shopping, doctor's appointments, cooking, taking care of her daughter, visiting friends, and attending [Narcotics Anonymous] meetings. Ms. Ogletree also noted she had observed the claimant taking walks to handle stress, though in other areas involving attention, following instructions, and getting along with others she has no knowledge (Ex. 3E). This statement reinforces the undersigned's conclusion that despite her mental disorder the claimant remains capable of performing jobs involving simple and detailed job instructions on a reasonably sustained basis compatible with the demands of substantial gainful activity.

(AT 20-21.)

        Plaintiff contends that the ALJ erred by not conveying in his written decision every single observation made by Ms. Ogletree. Oddly, plaintiff contends that the ALJ omitted Ms. Ogletree's "concession" that Ms. Ogletree did not know, among other things, how often plaintiff cooked, plaintiff's ability to perform house and yard work, and how often plaintiff went outside. Plaintiff also notes that Ms. Ogletree observed that plaintiff only took short walks to deal with stress and would need to rest after 30 yards, which indicated that plaintiff was a "fairly inactive person."

        The undersigned concludes that the ALJ did not err in addressing Ms. Ogletree's observations. At the outset, the ALJ did not reject Ms. Ogletree's report; instead, the ALJ credited Ms. Ogletree's report. Moreover, the ALJ fairly related Ms. Ogletree's observations in detail, and even noted topics of inquiry where Ms. Ogletree lacked knowledge or information. The undersigned does not find the ALJ somehow erred by not relating what Ms. Ogletree did *not* know, and plaintiff has cited no authority that suggests an ALJ bears such a burden. Finally, the ALJ did not err by not agreeing with *plaintiff's* post-hoc characterization of Ms. Ogletree's observations as substantiating that plaintiff was an inactive person.

        Plaintiff also contends that the ALJ rejected a Social Security Administration representative's observations that plaintiff had difficulty focusing and comprehending questions

during an interview.[13] (AT 109.) The undersigned finds it difficult to believe that an ALJ carries the onerous burden in every case of addressing, as lay witness reports, all of the observations made by every Social Security Administration representative who meets with a claimant during the administrative process. Plaintiff's argument appears to be novel as she has cited no authority for this proposed rule, and the undersigned has found none. In any event, the undersigned concludes that plaintiff, who was represented by counsel during the administrative process, waived this claim of legal error by not raising the issue or this evidence before the ALJ or the Appeals Council. See Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We . . . hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."). In contrast to plaintiff's reliance on Ms. Ogletree's lay witness report, plaintiff never raised or relied on the agency representative's observations during the administrative proceedings. (See AT 5-8 (plaintiff's request for review of ALJ's decision), 184-89 (plaintiff's letter brief to the ALJ).) Accordingly, the ALJ did not err by not addressing the Social Security Administration representative's observations of plaintiff.

E.   The ALJ Did Not Err at Step Four

Finally, plaintiff makes two arguments in support of her contention that the ALJ erred at step four of the sequential analysis. First, plaintiff asserts that the ALJ's finding at step four was erroneous because the RFC assessed by the ALJ failed to capture all of plaintiff's limitations. In this regard, plaintiff relies on the alleged errors addressed above, e.g., failure to properly address plaintiff's obesity, failure to credit plaintiff's testimony, etc. Because plaintiff's argument is entirely contingent on her arguments addressed above, and the undersigned has already concluded that the ALJ's determinations in those regards are free of error and supported

---

[13] Plaintiff fails to mention that same representative's observations that plaintiff was "fairly dressed and groomed," was "friendly and cooperative," and had no difficulties in hearing, reading, breathing, understanding, coherency, talking, answering, sitting, standing, walking, seeing, using her hands, or writing. (AT 109.)

by substantial evidence, plaintiff's argument addressed to the proper formulation of the RFC fails.

Second, plaintiff argues that the ALJ erred by finding that plaintiff could perform her past work as an answering service operator "as actually performed." (AT 21.) Plaintiff contends that such a finding, considered in conjunction with the ALJ's assessment that plaintiff could perform "simple, detailed, and unskilled work,"[14] conflicts with the functional requirements for the position of telephone answering service operator suggested in the Dictionary of Occupational Titles. See Dictionary of Occupational Titles, 235.662.026. Plaintiff intimates that the ALJ should have called on the services of a vocational expert to address plaintiff's ability to perform past relevant work.

The undersigned concludes that the ALJ did not err at step four, and his finding is supported by substantial evidence in the record. As an initial matter, an ALJ is not required to question a vocational expert at step four. The applicable regulations provide that an ALJ *may* consult a vocational expert to determine whether the claimant can return to his or her past work. See 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity" (emphasis added).); accord 20 C.F.R. § 416.960(b)(2). However, the regulations do not *require* an ALJ to use a vocational expert at step four. Case law is in accord that at step four an ALJ's determination that a claimant can perform past work need not be supported by the testimony of a vocational expert. See Mathews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding that because the claimant "failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not

---

[14] Again, the ALJ determined that plaintiff had the following RFC: "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, detailed, and unskilled work." (AT 19.)

17

required"); accord Campos v. Astrue, 565 F. Supp. 2d 1179, 1184 (C.D. Cal. 2009); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (holding that the ALJ's determination that the claimant could perform past work made it unnecessary for the ALJ to call a vocational expert at step five).[15] Plaintiff's suggestion that the ALJ was required to call a vocational expert at step four is misplaced.

Moreover, as the Commissioner argues, the ALJ permissibly relied on evidence in the record and plaintiff's own testimony to define plaintiff's past work as it was "actually performed."[16] (AT 21.) An ALJ may find that a claimant is not disabled at step four if the ALJ determines that the claimant is able to perform his or her work as he or she actually performed that work. See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) ("At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'") (citing Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002)); see also Soc. Sec. Ruling 82-61, 1982 WL 31387 (Aug. 20, 1980) (describing the three possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant, including "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it"). An ALJ may use a plaintiff's testimony to define past relevant work as it was actually performed. See Lewis, 281 F.3d at 1084 (noting in the context of a motion for attorney's fees that "the ALJ must assess the claimant's testimony and may use that testimony to define past relevant work as

---

[15] See also Hopkins v. Astrue, 227 Fed. App. 656, 657 (9th Cir. 2007) ("Although the vocational expert's testimony support's Hopkins's position, the ALJ was not required to call a vocational expert at step four."). Decisions of this court, albeit unpublished, are also in accord. See, e.g., Phongsuwan v. Astrue, No. CIV S-08-2193 GGH, 2010 WL 796969, at *8 (E.D. Cal. Mar. 5, 2010) (unpublished) ("The ALJ may consider the testimony of a vocational expert to determine if plaintiff can do his past relevant work; however, the ALJ is not required to call such an expert at the fourth step.") (citations omitted).

[16] Plaintiff neither anticipated the Commissioner's argument in her motion for summary judgment nor filed a reply brief to address this argument.

actually performed"); accord Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (noting that a claimant's own testimony may be used to define a claimant's past work as actually performed); see also Soc. Sec. Ruling 82-62, 1982 WL 31386 (Aug. 20, 1980) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work."). Here, the ALJ relied on plaintiff's testimony and other evidence in the record in determining that plaintiff could perform her work as actually performed. Accordingly, plaintiff's argument premised on the Dictionary of Occupational Titles is misplaced, and the undersigned concludes that the ALJ did not err at step four.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 18) is denied.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 19) is granted.

3. The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.

DATED: September 26, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE